Freeman, J.,
delivered the opinion of the court:
This action is brought against defendants as executors of "Wm. ÜVI. Balwell, deceased, to recover the purchase *718 money or balance due on a sale of a tract of land in Crit-tenden county, Ark., 'with, twenty-three negroes, farm stock, implements, etc., sold by Meath to said Talwell, about the 2d of May, 1862. The entire contest here, however, is as to the land and the charge of the court below on the questions raised growing out of the defenses set up by defendants in reference to the same. The only plea on which the case went to the jury was, that of the general issue, that neither defendant nor their intestate were indebted to plaintiff as he alleged in his declaration.
On this issue the question is, was there a sale of the property completed, so that the purchaser owes the purchase money. It might fairly involve the question as to whether a sale agreed on, or one perfected by conveyance, had been legally rescinded.
On the first question as to a sale, perfected in May, 1862, by the parties, by conveyance and delivery of and to the purchaser, the facts are such as to- warrant the verdict of the jury, certainly such as would prevent this court from reversing the case on the evidence, if the law was charged correctly. We need but refer to the facts shown that a deed was executed and delivered with usual warranties, the possession given, and retained as far as we can see up to the present time, but what is conclusive on this aspect of the case, is a letter written by Palwell, the purchaser, of date March 16, 1863.
Tie commences by saying that he “had been very patiently awaiting an honest settlement of differences between them.” Tie then tells him that, by the opinion of legal advisers, Meath was unable to make a title to- the land, and that negroes would not be available to him without the land. After arguing the propriety of his views, he then says: “I propose, and believe I am wholly morally and legally right in proposing, that our relation to- said transaction be canceled, and each party placed in his same equal rights as before said transactions were inaugurated.” *719 He then notifies him that the negroes were at his command; that he should have possession of them on demand, and if not demanded in five days, they might' go at the peril of Meath. This' letter clearly shows that Palwell understood the question of rescission of their trade to> be in fieri, as it no doubt had been between them from May, 1862, up to that period.
On the 19th, Meath replied refusing to rescind, insisted he could make a good title, and had already conveyed it to him; that the deed was simply withheld from registration by mutual consent, and placed in the hands of Mr. Massey during the examination of the title; He incloses the deed to him for registration, which was received 'and kept by Palwell, and remained in his possession up to the trial of the case, or until produced by defendant’s attorneys on examination of a witness. On this state of facts it is clear the jury were justified in finding the sale complete, and no rescission of the contract up to this time, if the law was correctly charged. On the first point, the question of execution and delivery- of the deed and acceptance by Falwell, His Honor’s charge is clear and explicit, stating the law somewhat elaborately it is true, but certainly with accuracy.
He tells the jury, in substance, that a simple manual delivery was not sufficient, but that it must have been delivered and received Avith the purpose of thereby passing the title, and Avhen this was done-, the act was complete.
This is the clear result of the whole charge, and any other view of it would be an unfair one. On the second question, of rescission after such delivery and acceptance as above stated, His Honor charged, in substance, that a rescission of such a contract so executed and completed, co-uld not be by parol, but required a reconveyance to complete it.
The case of Howard et al. v. Huffman, 3 Head, 563, certainly holds that, after the execution and delivery of a *720 deed to land, the. title having passed, a. reconveyance would he indispensable in order to revest the conveyor with the title, and that a redelivery of the deed, however intended by the parties, could not have this effect. We have followed this decision in at least one, if not more, cases, and think its principle sound in cases of sale and conveyance. If so, there could not he an executed and completed rescission of the contract till a conveyance back, certainly such as could be taken notice of in a court of law, though in a case like the present there might he an agreement to rescind, which a court of equity would enforce based on such acts, but no executed rescission.
The effect of the delivery of the deed or destruction of the same by the grantee, as a matter of estoppel, need not be here discussed. The jury have found under a proper charge that the delivery and acceptance of the deed were complete, and the facts certainly do not raise the redelivery or destruction of the deed by the grantee, with the purpose of revesting the title in the grantor, -and completing the rescission of the contract, as is abundantly shown by the letters both of Falwell and Meath hereinbefore referred to. The cases in [Walker v. Wheatly], 2 Hum., 119, and [England v. Jackson], 3 Hum., 584, do not affect the question before us. Both were cases of executory contracts, title bonds having been given by the vendors, and the only questions decided were that a parol rescission could be set up as a defense to a bill for specific performance. This is quite a different question from the one now before us. We do not deem any other question presented rquires discussion in this case, and affirm the judgment.