WALSH et al. v. ROSE et al.—193 S. W. (2d) 118.

Middle Section.    December 29, 1945.

Petition for Certiorari denied by Supreme Court, March 2, 1946.

80

W. A. Garrett, of Jamestown, for appellants.

W. C. Smith, of Jamestown, for appellees.

HICKERSON, J.   This is an ejectment suit. The land involved lies in Fentress County, Tennessee, on the

waters of Obed's River and Piney Creek and Bill's Creek; and it is described in the bill as being the land covered by grant No. 3329 issued by the State of Tennessee to Milton King on Fentress County Entry No. 488. The grant was dated March 16, 1830. There were certain exclusions set forth in the bill.

Complainants alleged they were the owners of the land; defendants had entered upon it under fraudulent claims and were "committing destructive trespass by cutting the timber from said lands"; some of the timber had already been sold; some was on the mill yard located on the land; and some logs which had been cut from the land were lying in the woods.

Complainants prayed that: (1) they be decreed to be the owners of the land; (2) an attachment be issued and levied on all the timber which had been cut from the land; (3) a receiver be appointed to take charge of the timber, sell it, and hold the proceeds to be paid out under orders of the court; (4) for an injunction to restrain defendants from cutting any more timber or selling what had been cut; (5) for a decree for the value of the timber removed and damages to the land; and (6) that certain deeds to defendants be declared void and removed as a cloud upon complainants' title.

George L. Stockton signed and swore to the original bill as "the local agent for complainants named in the foregoing bill." The suit was brought in the name of the alleged owners whom he represented as agent. Mr. Stockton was, also, the clerk and master of the chancery court of Fentress County.

The chancellor issued a fiat upon the foregoing bill for the attachment and injunction fixing the bond at $500. The bond was signed by complainants, as principals, and by

W. C. Smith, V. H. Pile and George L. Stockton, as sureties.

Thereupon, subpoenas to answer, the injunction, and the attachment were issued by George L. Stockton, clerk and master.

The suit was later dismissed as to Walter E. York, who was in the army.

All the defendants, except Wince Owens answered through their solicitor. They denied all the material allegations of the bill, alleged that the agreement between complainants and George L. Stockton under which the suit was bought was "unlawful, champertous, spurious, and fraudulent," and that by reason thereof complainants came into court with unclean hands, and the bill should be dismissed.

The defendants Yorks alleged they had been in actual possession of the land from which they sold the timber for more than seven years and twenty years, and that this possession was of such character as to perfect title in them.

Defendant Rose alleged he bought the timber from defendants Yorks, paid them for all he had removed, and the rest was on the mill yard. He denied complainants owned the land.

Defendant Lewallen alleged he had no interest in the land; that he had simply contracted to buy the lumber from Rose on the mill yard; and he had paid Rose for all lumber which had been removed by Lewallen.

Defendant W. F. (Wince) Owens answered in his own person, and denied that he was guilty of any wrong. He averred that he did buy certain timber from defendants Delmer York and Walter York but alleged that they claimed to own the land; showed him a deed to themselves

which covered the land; he purchased the timber in good faith; and paid the Yorks for it.

The chancellor held complainants had proved their title to the land described in the bill by deraigning from state grant No. 3329 to Milton King; and by proof of seven years adverse possession under registered color of title with exceptions, in addition to those set out in the bill, of the Henry Sargent, or Rose mill field, and that Delmer York owned an interest in some lands with the Sells heirs. The court also held that defendant Lewallen was not liable as a trespasser for timber cut from this land which was bought by him.

All other material issues were decided in favor of complainants.

The decree provided:

"To that part of the court's decree in holding that the defendant Hubert Lewallen was not liable as a trespasser, along with the other defendants, complainants excepted at the time and now except.

"The complainant excepted to that part of the court's decree wherein he held that the complainants were not entitled to recover the Sargent field, or Rose mill field as it is called, because the defendants introduced no competent proof to show themselves entitled to hold this lot, and because he is shown to have abandoned it if he ever had a bona fide possession on it, and he, Jesse York, and others have shown by sworn plea in the case of J. S. Allred and others v. W. F. (Wince) Owens and others, Rule No. 2319 in this court, that grant 3329 was a paramount title to the land it covered and plead same as an outstanding title in that case.

"The bill, answer and plea of defendants was read by complainant on the trial of this case, on notice, and the court orders it made a part of the record in this case.

"Complainants except to that part of the court's decree wherein he held that Delmer York owned an interest in some lands with the Sells heirs, and failed to include the same in the recovery, because the defendants introduced no competent proof to show that he had such an interest in lands on the inside of the boundary sued for with the Sells heirs.

"The defendants except to all adverse action of the court as aforesaid, and pray an appeal to the Court of Appeals sitting at Nashville, Tennessee, which appeal the court is pleased to grant, and the thirty (30) days are allowed from today, October 4, 1944, in which to perfect said appeal as provided by law, and sixty (60) days to make and file bill of exceptions dating from said date also, but said bill of exceptions will be deposited with the Special Clerk and Master before the expiration of forty-five (45) days, and the proposed bill of exceptions submitted to the court at least five (5) days before the expiration of the sixty days."

Defendants perfected an appeal to this Court. complainants did not.

A question of practice is presented. Complainants have assigned errors when they did not perfect an appeal. This practice is permitted if the appeal of defendants is broad, and not special or limited. Central National Bank v. Willis, 8 Tenn. App. 204; Pigg v. Houston and Liggett, 8 Tenn. App. 613. If the appeal of defendants were special or limited, complainants—appellees—who did not appeal, cannot assign errors in this Court which we can consider. County Board of Highway Commissioners v. Wilde, 179 Tenn. 141, 163 S. W. (2d) 329.

The portion of the decree quoted above shows the appeal of defendants was special. The adjudication of the

court was set forth in the decree. Part of the issues were decided in favor of complainants, and part in favor of defendants. Following that part of the decree, complainants made three special exceptions to the parts of the decree unfavorable to them. The next paragraph of the decree provides: "The defendants except *to all adverse action of the court as aforesaid*, and pray an appeal to the Court of Appeals sitting at Nashville . . ." Clearly, the appeal was limited to "all adverse action of the court as aforesaid," and does not present the entire case to this Court for review de novo. That leaves the assignments of error filed in behalf of defendants to be disposed of. We cannot consider the assignments filed in behalf of complainants.

1. Defendants make the question that the chancellor erred in permitting the bill to be filed and granting a fiat for the attachment and injunction when the bill was sworn to by George L. Stockton who was clerk and master of the court in which the bill was filed.

Defendants rely upon Code Section 9973 which prohibits clerks from practicing law in their own courts; and Code Section 10051 which provides that no clerk can become "security for the prosecution of suits in his court, nor upon any bonds or other obligations required to be executed by the parties in the progress of such suits."

George L. Stockton is not a lawyer in this case. He is agent of complainants. For his services he will receive a part of the recovery. There is no rule which would prevent a clerk from becoming a party litigant in his own court. Such fact would be ground for his removal in that case as clerk of the court, but would not be ground for dismissing the suit.

It is true that Stockton signed the injunction and attachment bond in violation of the statute; but the bond

was also signed by W. C. Smith and V. H. Pile. No motion was made to strike the name of Stockton from the bond. The solvency of the two other sureties is not questioned. The mere fact that a clerk and master signed a bond as surety, is not ground for dismissing the case when the bond is signed by other sureties.

Code Section 10654 expressly provides that this Court cannot reverse the decree of trial court "for any error in any procedure in the cause, unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial." It does not affirmatively appear that the name of George L. Stockton on this bond affected the results of the trial.

2. Defendants contend that complainants come into court with "unclean hands" because they entered into a champertous contract with George L. Stockton relating to the posecution of this suit; and for that reason defendants say the chancellor should have dismissed the bill.

The proof shows that Stockton first contacted complainants in regard to taxes which were being collected through the chancery court of which he was clerk and master. Being of the opinion that they should have a local agent to look after their lands in Fentress County, George L. Stockton was employed by complainants for that purpose. Defendants contend that complainants' claims were old, stale and abandoned; and that these claims would not have been asserted if it had not been for the efforts of George L. Stockton. That may be true, but the chancellor held complainants had legal title to the lands sued for. We see nothing improper about the clerk and master accepting this agency or employment in his in-

dividual capacity. His diligence in looking after the interests of his principals is to be commended. It is the rule in this state that a suit will not be dismissed for champerty because complainants and an attorney or layman entered into a champertous contract relating to its prosecution. Staub v. Sewanee Coal, Coke & Land Company, 140 Tenn. 505, 205 S. W. 320.

3. Defendants assign as error the refusal of the chancellor to compel George L. Stockton to file the contract which he had with complainants as evidence in this cause.

We find no error in this action of the chancellor. Mr. Stockton admitted he was employed as agent for complainants on a contingent basis and that he would be paid for his services out of the recovery which was had, if any. The contract between him and complainants could not possibly be relevant to the determinative issues in this suit.

4. Assignment No. 3 is: "The chancellor erred on the 30th day of Sept., 1943, in overruling defendants' exceptions to the deposition of Constance Bond, one of the complainants, taken on interrogatories, for the reasons shown by said exceptions."

Defendants make four objections to these interrogatories all of which are technical and go to the admissibility of the interrogatories as a whole: (1) the statutory notice was not given; (2) the clerk and master was disqualified to give the statutory notice because he was interested in the case; (3) the length of the notice was not sufficient; and (4) the interrogatories were answered in the presence of counsel representing complainants, counsel for defendants not being present.

The following notice was given:

"Notice of Filing Interrogatories

"Adalaide M. Walsh et al. v. Archie Rose et al.

"No. 2377

"In the chancery court

at Jamestown, Tennessee.

"To W. A. Garrett, Attorney for defendants:

"You are hereby notified that I have this day filed with the clerk & master at Jamestown, Tennessee, interrogatories to be propounded to Constance Bond, a witness in said cause, in behalf of complainants, who resides in Chicago, Illinois.

"This December 24, 1942.

"W. C. Smith,

"Solicitor for Complainants.

"Deposition will be taken between 10 A. M. and 3 P. M. at the office of Alden, Latham & Young, room 1110, 134 South LaSalle Street, Chicago, Illinois, on the 11th of January, 1943. Filed December 24, 1942.

"Geo. L. Stockton,

"Clerk and Master.

"I certify that I delivered W. A. Garrett a true copy of this notice on this the 24th of December, 1942.

"Clyde Conatser,

"Sheriff of Fentress Co. Tenn."

The interrogatories were taken pursuant to this notice and returned to the clerk and master of Fentress County where they were filed in this case on January 15, 1943.

The applicable Code sections are:

Code, Section 9827: "When the witnesses reside out of the state, or over one hundred and fifty miles from the place of trial, either party may take depositions by filing interrogatories with the clerk, giving the opposite party

notice thereof, who shall have ten days thereafter to file cross interrogatories, to which rebutting interrogatories may then be put; at any time after which the deposition may be taken upon a certified copy of the interrogatories, to be issued by the clerk.''

Code, Section 9829: ''In all cases where depositions are taken by filing interrogatories with the clerk, as provided by the two preceeding sections, it shall be the duty of the clerk to give notice of the filing of such interrogatories to the counsel or guardian ad litem of the opposite party, and such notice shall be sufficient, if such opposite party be a non-resident. If there be no counsel or guardian ad litem notice may be given under section 10455.''

■■ Defendants contend that this notice must be given by the clerk and it was given by solicitor for complainants. No form of notice is required by the statute. Code Section 9829. The record shows that W. C. Smith, solicitor for complainants, signed the notice; then it was filed by the clerk, and given to the sheriff who served it on the solicitor for defendants. The record does not show whether the master or the solicitor for complainants actually handed the notice to the sheriff. The purpose of the statute is to see that the opposite parties have notice of the filing of the interrogatories, so they can file objections thereto, or cross-interrogatories. We hold the procedure in this case met the requirements of the statute. There is no contention on the part of defendants that they did not have actual notice.

Defendants seem to rely most strongly upon the fact that George L. Stockton, who was interested in the outcome of the suit, performed certain duties as clerk and master in connection with the suit, including the filing and mailing these interrogatories before they were an-

swered, and filing them after they were answered. In disposing of these contentions the chancellor said: "It is also insisted that the case should be dismissed because George L. Stockton made an agreement with the complainants to look after their lands, etc., as shown by the record, and that he is also clerk and master of this court, and has filed some papers in the case. A special clerk and master was appointed during the progress of the case. I do not find in the record where George L. Stockton as clerk and master passed on any exception or questions of evidence. All that has been done by him are ministerial acts, and I am unable to find any authority that would warrant the court in dismissing the case for this reason."

If defendants objected to the performance of these ministerial acts by George L. Stockton they had their remedy by motion to appoint a special clerk and master to act in the case. When this motion was made the chancellor promptly sustained it, and appointed a special clerk and master. Defendants do not question what George L. Stockton did as clerk and master, but the fact that he did it. In the absence of a showing of prejudice from some of these ministerial acts which he did, we do not think that the mere fact that he did them would constitute reversible error.

Was the length of the notice sufficient? Notice of seventeen days was given. Defendants contend this was not sufficient. They cite Code, section 9823 as authority for their contention, which provides: "When the depositions are to be taken out of the county, the notice shall be as follows: For fifty miles or under, five days; from fifty to one hundred miles, ten days; over one hundred and not exceeding two hundred and fifty, fifteen days; if over two hundred and fifty and not exceeding five hundred, twenty days; if over five hundred, thirty days."

We do not think this Code section governs. It refers to depositions which are taken in the regular manner, not by interrogatories. Code Section 9827, supra, governs the length of notice when taking depositions upon interrogatories. No particlar length of notice is specified. The opposite party has ten days after receiving notice of the filing of interrogatories to file cross-interrogatories. The requirements of that statute were met in the instant case.

We think the objection to these interrogatories on the ground that they were taken in the presence of a solicitor for complainants when a solicitor for defendants was not present is well taken.

Code Section 10605, Rule II, section 7, provides: "In all cases when depositions are taken upon interrogatories as now prescribed by law, the certificate of the commissioner shall show who were present; and if it appears that either party, his agent or solicitor, were present at the taking of the same and the other party was not present in person or by agent or solicitor, it shall be good cause for objections to the admissibility of such deposition."

The taking of depositions by interrogatories is usually done in the absence of the parties, their agents, or solicitors. To guard against an advantage which might be gained by the presence of one party, his agent, or solicitor, when the interrogatories are answered in the absence of the other party, his agent, or solicitor, this statute was passed.

Complainants, however, contend that defendant's exceptions came too late. After these interrogatories were answered they were returned to the clerk and master of Fentress County and filed by him in this case on January 15, 1943. The exceptions were filed on June 2, 1943. The

chancellor overruled the exceptions. He cannot be put in error for so doing when Code Section 10605, Rule II, section 5 provides: "All exceptions to depositions for want of notice, because not filed within proper time, or for other cause going to the admissibility thereof, except objections to the competency of the witness or his evidence, shall be made before the clerk within thirty days after the depositions are filed."

These exceptions were not filed for nearly four months after the interrogatories were filed, so the exceptions came too late and the chancellor properly overruled them.

5. Assignment of error No. 6 complains generally of the decree entered by the chancellor and is divided into nine separate specifications. We shall consider them in the order stated in the assignment:

(1) "In the opinion the chancellor erroneously found that prior to 1937 the defendants had no deeds covering the disputed land."

Complainants did not seek to recover the land excluded in the bill. Prior to 1937 the deeds which defendants Yorks held were: (a) George York, Sr., to J. F. York, 25 acres; (b) George York, Sr., to J. F. York, four acres; (c) C. M. York to J. F. York, two acres; (d) George York, Jr., to Jesse York, 12 acres; and (e) George York, Jr., to Maggie York, wife of Jesse York, 60 acres. All these deeds, except the deed to the two acres tract, conveyed land which was a part of the 100 acres that was formerly owned by G. W. York, and that was expressly excluded in the bill from the recovery sought in this case. Furthermore, these deeds covered all the land which defendants York owned by deed within the boundaries of grant No. 3329. The description in these deeds do not cover the lands sued for, and the chancellor correctly so held.

(2) The chancellor erroneously held: "that Jesse York used the Wilson Ridge enclosure or possession by permission of Tom Wheeler."

Tom Wheeler was the agent of complainants' predecessors in title. The proof justified the foregoing finding of fact by the chancellor, and we concur therein.

(3) There is no merit in the contention of defendants that the chancellor erred when he refused to recuse himself.

(4) The complaint listed under section (4) of assignment 6 is too general and indefinite to be considered by this court. We quote this specification: "The statement and premise contained in the chancellor's opinion at pages 764 and 765 of Vol. 4 of the transcript, with reference to Geo. L. Stockton, local agent for the complainants and clerk and master are erroneous."

(5) This complaint goes to the merits of the case. It is: "That part of the final decree entered as a chambers decree wherein it is decreed that the complainants are the owners in fee and entitled to the possession of the lands sued for is erroneous."

[6] Complainants had four methods of proving their title: (1) by deraigning from the state grant; (2) by seven years' adverse possession under registered color of title, where the land had been granted by the State of Tennessee; (3) by prescription, twenty years' actual adverse possession or (4) by deraigning title to a common source. Atkinson v. Atkinson, 23 Tenn. App. 269, 130 S. W. (2d) 157.

The chancellor held complainants had proved title in themselves by deraigning from the state grant, and by seven years' adverse possession under registered color of title. Defendants do not point out why complainants

failed to deraign, nor any weakness in complainants' chain of title. As we view the case, it is not necessary for us to decide whether complainants proved a regular chin of title from the state grant. The evidence shows beyond question that complainants did prove title in themselves by showing they had held the land in dispute adversely for more than seven years under registered color of title. We concur in that conclusion of the chancellor.

(6) The chancellor held the deeds from Jesse York to L. D. York and George Edgar York; from Jesse York to Delmer York and Walter E. York; from L. D. York to Maggie York; and from Delmer York to Kenneth Owens and Dora Owens were fraudulent and void and removed them as a cloud upon complainants' title. This action of the chancellor is assigned as error.

The deed from Jesse York to L. D. York and George Edgar York (R. 517) purports to convey only 75 acres. The description actually covers 1000 to 1500 acres.

The deed from L. D. York to Maggie York (R. 520) purports to convey a one-half undivided interest in the foregoing tract of 75 acres.

The deed from Jesse York to Delmer York and Walter E. York (R. 522) purports to convey only 50 acres. The description covers several hundred acres.

Jesse York did not own this land which he attemped to convey to his sons. The deed were actually executed and registered in 1937; but they show on their face they were executed in 1916. Some of the sons, who were grantees, were not born at the time the deeds were executed. Jesse York laid his foundation to rely upon these deeds as having been executed in 1916, as shown on their face. However, upon cross-examination, he admitted they were back dated from 1937 to 1916; and they were actually

executed in 1937. It is perfectly apparent that Jesse York thought he could gain some advantage in regard to his claim to the disputed land by this act. The deeds are fraudulent and void and a cloud upon complainants' title, and the chancellor properly so held and removed them as such.

That part of the decree which declares the deed from Delmer York to Kenneth Owens and Dora Owens as a cloud upon complainants' title presents a different question. The prayer of bill sought to have this deed removed as a cloud. The chancellor granted the prayer and so decreed. Neither defendants nor complainants comment on this assignment in their briefs. We have searched the record carefully and do not find any reference to this deed in the proof. The deed itself was not filed. The only reference to it is in the prayer of the bill, the decree of the chancellor and the assignment of error. The record before this Court is abridged. But defendants specified that all proof introduced by complainanst or defendants should be included in the record. We must conclude, therefore, that this deed was not introduced and that there was no proof in regard to it. That being true, it would be impossible for the chancellor to tell whether or not the deed was a cloud upon complainants' title. To that extent we think the chancellor committed error.

(7) The chancellor properly referred certain questions in this case to the master.

(8) The taxing of costs was within the discretion of the chancellor under the statute. Code Section 10603. Unless he abused that discretion this Court will not reverse his decree in taxing costs. Savage v. Neal, 151 Tenn. 70, 268 S. W. 375.

That discretion was not abused in this case, but we think it was properly exercised.

(9) Defendants make the question that: ''The chancellor erroneously caused to be entered of record as a chambers decree the final decree, on the 4th day of Oct. 1944.''

The chancellor stated: ''The record in this case has been held under advisement until today, October 4, 1944, for the purpose of entering a final decree in the case in accordance with the written opinion made and filed with the special clerk and master on August 22, 1944, since which time counsel for complainants have sent to the chancellor by mail at Livingston, Tennessee, a draft of a decree in accordance with the directions in the written opinion, and the court held said decree and the record under advisement in order that counsel for defendant could have opportunity to make any suggestions with reference to a proper decree in accordance with said opinion and finding of facts heretofore filed, and no decree having been received by the chancellor until the meeting of the regular September term of the court at Jamestown, Tennessee, and in open court the chancellor stated to counsel the reason said decree had not been entered and requested counsel for defendants to draft such decree as he considered proper in the case in accordance with said opinion, counsel for defendants not approving the draft of the decree submitted by counsel for complainants, whereupon, during the regular term counsel for the defendants submitted to the court a draft of a proposed decree and the court taking the same under advisement and holding the entire record under advisement as aforesaid, until today at chambers at Livingston, Tennessee, this decree is approved for entry and the special clerk and master is directed to enter the same as a chambers

decree on the minutes of the court and preserve as provided by law, and notify counsel for both sides in writing of the receipt and entry of said decree.''

The entry of this decree at chambers was clearly authorized by Code, Section 10501, as construed by our Supreme Court in Trapp v. McCormick, 175 Tenn. 1, 130 S. W. (2d) 122.

Defendants failed to show that they had acquired title through adverse possession under registered color of title to the land involved in this suit. They had no registered color of title for seven years. The chancellor properly limited them to the lands actually possessed by them. They, also, failed to maintain their defense of title outstanding in third persons.

With the one modification that the deed from Delmer York to Kenneth Owens and Dora Owens cannot be removed as a cloud on complainants' title, the decree of the chancellor is affirmed. Remand to the chancery court for further proceedings. Tax defendants with all costs.

Felts and Howell, JJ., concur.